`

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

              Plaintiff,

      v.

K.O.O. CONSTRUCTION, INC., et al.,

              Defendants.

Case No.  16-cv-00518-JCS

**ORDER REGARDING MOTION FOR
PARTIAL SUMMARY JUDGMENT
AND MOTION FOR ATTACHMENT**

Re: Dkt. Nos. 58, 59

## I.  INTRODUCTION

This is a diversity jurisdiction action under California law.  Plaintiff Travelers Casualty and Surety Company of America ("Travelers") moves for partial summary judgment on certain issues and for an order of attachment based its claims that Defendants K.O.O. Construction, Inc. ("K.O.O.") and Keith Odister breached contractual indemnity obligations relating to construction projects.  The Court held a hearing on December 16, 2016.  For the reasons discussed below, each motion is GRANTED in part and DENIED in part.[1]

## II.  BACKGROUND

### A.  Factual Record

#### 1.  Declaration of Jamie Burgett

Travelers submits a declaration by its associate claim counsel Jamie Burgett outlining the history of the parties' contracts, claims that Travelers has paid on bonded projects, expenses that Travelers incurred investigating the claims, claims that remain open, and the parties' communications.  *See generally* Burgett Decl. (dkt. 58-2).

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

Travelers issued at least nine[2] surety bonds naming K.O.O., its business affiliate Total Team Construction Services, Inc. ("Total Team"), or a joint venture between K.O.O. and Total Team as the principal. *Id.* ¶ 3 & Exs. A−I. The total limit of the bonds is more than $63,000,000, and approximately $21,000,000 of unbilled work remains outstanding. *Id.* ¶ 4.

Travelers required both K.O.O. and Odister to execute indemnity agreements for the bonds. *Id.* ¶ 5. In 2002, Defendants signed an agreement, which remains in effect, to indemnify Travelers for bonds naming K.O.O. as principal. *Id.* ¶ 5 & Ex. J ("K.O.O. Agreement"). In 2004, Defendants and others signed a second agreement to indemnify Travelers for bonds naming Total Team as principal. *Id.* ¶ 6 & Ex. K ("2004 Total Team Agreement"). Defendants terminated their agreement to indemnify new Total Team bonds in July of 2010, but their obligations under the 2004 Total Team Agreement remain in effect as to bonds issued before that termination. *Id.* ¶ 6. In August of 2010, Total Team and its president Kendall Brooks—both of whom are not parties to the present action—signed a new indemnity agreement. *Id.* ¶ 7; 1st Am. Compl. ("FAC") Ex. C ("2010 Total Team Agreement").[3] Two years later, in August of 2012, K.O.O. and Odister executed a rider to the 2010 Total Team Agreement, agreeing to indemnify Travelers for certain bonds governed by the 2010 Total Team Agreement—specifically, bonds related to a project at Fort Hunter Liggett in California. Burgett Decl. ¶ 7 & Ex. M. In May of 2015, Total Team defaulted on some of its projects, including a joint venture project with K.O.O., and K.O.O. agreed to take over and assume full responsibility for the joint venture project. *Id.* ¶ 8 & Ex. N.

From April of 2015 through August of 2016, Travelers paid thirty-three claims related to six bonded projects, totaling $1,099,990.14. *Id.* ¶ 9 & Ex. O. Burgett's declaration itemizes each of those payments and attaches copies of checks or payment records for thirty-two of them.[4] *Id.*

---

[2] According to Burgett, the nine bonds discussed in her declaration are not a complete list of all bonds that Defendants agreed to indemnify, but instead "only reflect those Bonds with paid claims or open claims as of the date of this declaration." Burgett Decl. ¶ 4.

[3] Burgett's declaration purports to attach the 2010 Total Team Agreement as Exhibit L, but as Defendants note in their opposition to summary judgment, the declaration in fact erroneously includes a second copy of the 2004 Total Team Agreement as that exhibit. *See* Opp'n to MPSJ (dkt. 66) at 3 n.1; Burgett Decl. ¶ 7 & Ex. L. Defendants acknowledge in their opposition brief and their answer that Exhibit C to the First Amended Complaint is a true and correct copy of the 2010 Total Team Agreement. Opp'n to MPSJ at 3 n.1; Answer (dkt. 41) ¶ 12.

[4] Exhibit O to Burgett's declaration does not include a check or other record for a $33,341.50

According to Burgett, "Travelers informed Defendants of each and every claim against the Bonds and provided Defendants with an opportunity to respond to or resolve the claims before Travelers paid the claimants," but "Defendants failed to resolve the claims." *Id.* ¶ 11.  Of the total amount that Travelers has paid, Defendants have reimbursed Travelers for $170,000.  *Id.* ¶ 10.  Burgett also itemizes expenses totaling $55,589.20, *id.* ¶ 13, and open, unpaid claims totaling $2,025,784.05, *id.* ¶ 14, several of which are the subject of three civil actions pending against Travelers and K.O.O. in the Central and Southern Districts of California, *id.* ¶ 15.[5]

Burgett exchanged correspondence with Defendants in which Travelers demanded that Defendants indemnify Travelers for its losses and post collateral, but Defendants refused to do so. *Id.* ¶¶ 18−24 & Exs. T−X.  At one point in August of 2016, Odister asked Travelers to pay some of K.O.O.'s subcontractors $502,000 because K.O.O. did not have funds available to make the payment; Odister said that K.O.O. would be able to repay Travelers that amount in approximately forty-five days.  *Id.* ¶ 17 & Ex. S.  Burgett also states that K.O.O. acknowledged that it owed Total Team $342,235.81 on a promissory note originally in the amount of $1,495,600.71, and that Travelers had been assigned Total Team's rights under that note pursuant to the indemnity agreements.  *Id.* ¶¶ 28−29 & Ex. Y.

## 2. Declaration of Keith Odister

The substantive content of Odister's declaration, submitted in opposition to Travelers' motions, reads in full as follows:

> 1.      I am the President and CEO of K.O.O. Construction, Inc. ("K.O.O.").
>
> 2.      In addition to the $170,000 paid to Travelers to reimburse it for claims Travelers paid on the Fort Hunter Liggett Project, K.O.O. paid $186,843.15 directly to various parties in connection with the completion of the project.
>
> 3.      I disagree with Travelers [sic] contention that it acted in good faith in fulfilling its obligations under the bonds. In many, if

---

payment to "WR Robbins Co." on July 11, 2016.
[5] Those pending cases are *United States ex rel. Hudson P. Davis, Inc. v. K.O.O. Construction, Inc.*, No. 15-cv-2049-JAH-WVG (S.D. Cal.); *United States ex rel. Hudson P. Davis, Inc. v. K.O.O. Construction, Inc.*, No. 2:16-cv-04526-SJO-JEMx (C.D. Cal.); and *United States ex rel. De la Fuente Construction, Inc. v. K.O.O. Construction Inc.*, No. 16-cv-0368-BTM-DHB (S.D. Cal.).

not most, instances, the amounts it paid to subcontractors were objectively unreasonable. Many of the payments were made before the subcontractors were entitled to receive payment under the terms of their respective subcontracts.

4.      K.O.O. has not received a full explanation of the basis for Travelers' decision to make the payments for which it now seeks reimbursement and K.O.O. disputes the propriety and necessity of the payments made by Travelers.

Odister Decl. (dkt. 66-1).

### 3.   Declaration of Kendall Brooks

Defendants also submit a declaration by Kendall Brooks, president and CEO of Total Team.  *See generally* Brooks Decl. (dkt. 66-2).  Brooks states that Travelers received final payment of $1,941,506 on a bonded project for a medical center generator replacement in Fresno, California on September 7, 2016, and attaches a copy the bond for that project and an email from Travelers acknowledging receipt of the payment.  *Id.* ¶¶ 1−2 & Exs. A, B.  That bond, number 105337440, was not one of the bonds listed as having paid or open claims in Burgett's declaration. *See id.* ¶ 1 & Ex. A; Burgett Decl. ¶¶ 3, 9, 14.

Brooks also states that the promissory note discussed in Burgett's declaration was paid in full before Travelers filed its motions.  Brooks Decl. ¶ 3.

### 4.   Declaration of Brittany Rose

Travelers submits a declaration by its associate claim counsel Brittany Rose in support of its reply briefs on both motions.  *See generally* Rose Decl. (dkt. 72-1).  Rose states that Travelers has paid claims totaling $12,140,959.96 on surety bonds issued to Total Team.  *Id.* ¶ 2 & Ex. AA. Travelers has received $7,544,516.16 from projects subject to those bonds, including the $1,941,506 payment discussed by Brooks and the $170,000 reimbursement acknowledged by Burgett.  *Id.* ¶ 4 & Ex. BB.  Travelers has therefore incurred a net loss of $4,596,443.80 on Total Team bonds.  *Id.* ¶ 6.

K.O.O.'s indemnity obligations for the Total Team bonds are limited to bonds associated with a single project, at Fort Hunter Liggett.  *Id.* ¶ 3; *see also* Burgett Decl. Ex. M.[6]  Of Travelers'

---

[6] Some claims at issue also relate to a Total Team/K.O.O. joint venture project, but indemnity for that project is governed by the K.O.O. Agreement, not either of the Total Team Agreements.  Rose

4

total payments on Total Team bonds, its motions in this litigation only relate to claims it paid on that project, which total $375,561.29.  Rose Decl. ¶¶ 2, 6; *see also* Burgett Decl. ¶ 9.  Of the more than seven million dollars that Travelers has received on the Total Team bonds, only the $170,000 reimbursement from K.O.O. relates to the Fort Hunter Liggett project.  Rose Decl. ¶¶ 4−5.

Rose's declaration also itemizes a number of claims that it paid or that were opened after Travelers' motions and Burgett's declaration were finalized.  *Id.* ¶¶ 9−13.  According to Rose, "Travelers still anticipates future losses of $2,000,000.00 or more over and above the net now due for paid claims."  *Id.* ¶ 14.

### B.    Arguments

#### 1.    Travelers' Motion for Summary Judgment

Travelers argues that it is entitled to indemnity and interest from Defendants for payments that Travelers made pursuant to the bonds.  According to Travelers, construction sureties generally have broad discretion to settle claims, and the provisions of the indemnity agreements granting Travelers such discretion are enforceable.  Travelers' Mot. for Partial Summ. J. ("MPSJ," dkt. 58) at 14−17.  Pursuant to the agreements, Travelers contends that the declaration of its associate claim counsel Jamie Burgett and attached copies of checks constitute prima facie evidence of Defendants' liability for payments totaling $929,990.14 (taking into account $170,000 that Defendants have already paid).  *Id.* at 9, 14−17.[7]  Travelers argues that it is entitled to summary judgment because undisputed evidence demonstrates that Defendants breached their contractual obligation to indemnify Travelers for that sum, and that prejudgment interest should be assessed at ten percent per year under section 3289 of the California Civil Code because the contracts at issue do not specify an interest rate.  *Id.* at 18−19.  Travelers also argues that certain claims have not yet been resolved, and therefore reserves its right to seek recovery of damages stemming from those claims in the future.  *Id.* at 18 (citing Burgett Decl. ¶¶ 14, 15, 17).

---

Decl. ¶ 8.
[7] Although Burgett's declaration also itemizes expenses and fees that Travelers have incurred in investigating and resolving the claims at issue, *see* Burgett Decl. ¶¶ 12−13 & Ex. P, Travelers' motion does not seek summary adjudication of Defendants' liability for those costs.  *See generally* MPSJ; Proposed Order (dkt. 58-1).

United States District Court
Northern District of California

United States District Court
Northern District of California

1       Defendants argue that Travelers' motion should be denied because this case is "far from a

2   garden variety surety action," noting the shared indemnity obligations of Defendants and Total

3   Team and the fact that certain bonded projects will continue into 2017.  Opp'n to MPSJ (dkt. 66)

4   at 1.  According to Defendants, each indemnity agreement "appl[ies] to the entire bond program,"

5   not to specific bonds or projects, and thus profits and losses must be reconciled based on the

6   programs as a whole.  *Id.*  Defendants suggest that such reconciliation cannot be done in good

7   faith while projects within those programs have yet to be completed.  *Id.*  Defendants also contend

8   that the provisions of the indemnity agreements establishing that declarations by Travelers

9   employees constitute prima facie evidence must include a requirement of good faith, because

10  otherwise they would be "effectively a conclusive evidence clause contrary to public policy" and

11  "would relegate the Court to the ministerial task of entering judgment for the surety."  *Id.* at 1, 10;

12  *see also id.* at 8−9 (citing authority for applying a duty of good faith and fair dealing to surety

13  contracts).  According to Defendants, imposing a duty of good faith, reading the contracts in their

14  entirety, construing ambiguities against the Travelers as the drafter of the contracts, and giving

15  meaning to the words "all" and "any" in the agreements and the complaint, lead to the conclusion

16  "that Travelers viewed its rights and [Defendants'] obligations as arising under one bond program

17  and not separate bonds."  *Id.* at 8−12.  Defendants also argue that "Travelers has provided no

18  evidence to support for [sic] the validity or reasonableness of its decision to pay the claims [and

19  expenses] for which it now seeks reimbursement . . . on which the Court could conclude that

20  Travelers met its good faith obligation to investigate, analyze and resolve the claims."  *Id.* at 10.

21      The introduction section of Defendants' opposition briefly asserts that Defendants have not

22  yet investigated the circumstances of Travelers' payments and lacks information about the recent

23  $1.94 million payment to Travelers for one of the Total Team projects, and therefore argues that

24  the Court should deny or defer consideration of the motion under Rule 56(d) of the Federal Rules

25  of Civil Procedure.  *Id.* at 1.  According to Defendants, Travelers' "piecemeal approach" of

26  seeking summary judgment as to the validity of certain claims that Travelers paid is inefficient and

27  improper.  *Id.* at 5−6.

28      In its reply brief, Travelers argues that Defendants have admitted the validity and existence

of the contracts at issue and that Defendants do not dispute that Travelers made the claim payments at issue. Reply re MPSJ (dkt. 73) at 1. Travelers disputes Defendants' position that they are entitled to credit for the recent payment—according to Travelers, the only applicable credit is the $170,000 acknowledged in its motion—but argues that "the court need not even reach that issue since it simply is not necessary to resolve it before granting partial summary judgment on the claims" and leaving the issue of credits for trial. *Id.* at 4. Travelers cites a number of cases granting partial summary judgment for sureties in what it contends are similar circumstances. *Id.* at 2–4. According to Travelers, partial summary judgment here would promote rather than impair the efficient resolution of the case. *Id.* at 5–6.

Travelers also contends that Odister's "conclusory declaration" that Travelers made unreasonable payments before they were due is not sufficient to defeat summary judgment, in part because even if Travelers had overpaid claims or paid them earlier than required, that alone is not sufficient to negate Defendants' liability unless Travelers acted in bad faith, which Defendants have not shown. *Id.* at 6–9. As for Defendants' argument that the motion should be deferred under Rule 56(d) so that Defendants can continue to investigate the facts, Travelers contends that Defendants' own project records would be sufficient to show if any claims had been overpaid, and absent any such showing, there is no need for discovery regarding Travelers' subjective intent. *Id.* at 9–10.

In addition to the claims listed in its motion, Travelers' reply also seeks summary judgment as to another nine claims, totaling more than $600,000, that it paid after its motion was finalized. *Id.* at 2; Rose Decl. ¶ 10.

### 2. Travelers' Motion for Right to Attach Order

Travelers also moves for attachment of more than $3,000,000 under Rule 64 of the Federal Rules of Civil Procedure and section 483.010 of the California Code of Civil Procedure. *See generally* Mot. for Right to Attach Order ("Attachment Mot.," dkt. 59). Travelers relies on the provisions of the indemnity agreements requiring Defendants to indemnify it for actual loss, as well as provisions requiring Defendants to provide collateral against actual or anticipated loss upon Travelers' demand. *Id.* at 4–7. Pursuant to those provisions, Travelers' motion seeks to

7

1   attach $968,643.43 for claims paid and interest thereon, $55,589.20 for expenses incurred in

2   resolving those claims, $342,235.81 for principal due on a promissory note, and $2,000,000 as

3   collateral demanded for open claims. *Id.* at 12.

4       Travelers argues that it is entitled to the attachment it seeks under section 483.010 because

5   its claims are for money and based on a contract, the liability at issue is greater than $500,

6   Travelers does not have an existing security interest in any real property, and the claims against

7   Odister arise out of his business dealings. *Id.* at 17−19.  Travelers also contends that Burgett's

8   declaration and the evidence attached to it establish the probable validity of its claims, that it does

9   seeks attachment to protect itself from the risk that it would be unable to collect a judgment and

10  not for any improper purpose, and that the categories of property it seeks to attach are allowed

11  under California law. *Id.* at 20−23.  The proposed order submitted with Travelers motion lists a

12  number of categories of Defendants' property that Travelers seeks to attach. *See* Proposed Order

13  (dkt. 59-1).

14      Defendants argue that Travelers is not entitled to attachment because its claims are not for

15  a "'fixed or readily attainable amount'" as required by California law.  Opp'n to Travelers' Mot.

16  for Right to Attach Order ("Opp'n to Attachment," dkt. 67) at 1 (quoting Cal. Civ. Proc. Code

17  § 483.010(a)).  According to Defendants, Travelers' request for $2,000,000 collateral is a

18  "speculative estimate . . . not supported by any evidence as to the status of the projects, the

19  remaining contract balance on the projects, or why Travelers believes there is a potential that it

20  will suffer any losses on those projects at all." *Id.* at 1, 2−3.  Defendants also contend that the

21  recent $1.94 million payment that Travelers received on a Total Team project should offset the

22  amount that Travelers seeks to collect for the Total Team project at Fort Hunter Liggett, and that

23  the promissory note that Travelers cites has been paid in full. *Id.* at 3 (citing Brooks Decl.).

24  Defendants note that Travelers has filed a UCC financing statement with the California Secretary

25  of State, which Defendants suggest obviates any need for attachment. *Id.* at 3−4 & Ex. A.

26  Defendants further argue that Travelers' rights under the agreements are subject to a duty of good

27  faith, and "Travelers has provided no evidence to support . . . the validity or reasonableness" of the

28  claims and expenses at issue. *Id.* at 4−6.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    Travelers contends that its $2,000,000 collateral demand meets the requirement for a fixed

2    or readily attainable amount under California law because the parties' agreements grant Travelers

3    the right to demand collateral and Travelers has demanded exactly $2,000,000, which is a fixed

4    amount.  Reply re Attachment (dkt. 72) at 1, 8−9.  Travelers also argues that the $1.94 million

5    payment does not affect its right to attachment because Travelers' losses on Total Team projects

6    that were not indemnified by K.O.O.—which includes the project for which it received the

7    payment—far exceed the amount of the payment.  *Id.* at 2−6.  Regardless, Travelers contends that

8    only $205,561.29 of the actual losses it claims were on a Total Team project (after accounting for

9    the $170,000 reimbursement by Defendants), with the remainder attributed to projects governed

10   by the separate indemnity agreement for K.O.O. projects, and that all of the open claims on which

11   Travelers bases its $2,000,000 collateral demand are governed by the K.O.O. Agreement.  *Id.* at 2.

12   Travelers argues that Burgett's declaration provides sufficient evidence as to the probable validity

13   of its claims, including evidence of Travelers' good faith, and that "the conclusory assertions in

14   Defendants' declarations do not warrant denial of this writ application."  *Id.* at 9−13.

15   Travelers also argues that its actual losses and open claims have increased since it filed its

16   motion, *id.* at 7 (citing Rose Decl. ¶¶ 9−10, 12), and withdraws its claim for attachment based on

17   the promissory note, although it expresses skepticism of Defendants' contention that the note has

18   been fully paid and reserves the right to seek recovery on the note at trial, *id.* at 4.

19   **III.   ANALYSIS**

20        **A.   Motion for Partial Summary Judgment**

21             **1.   Legal Standard**

22   Summary judgment on a claim or defense is appropriate "if the movant shows that there is

23   no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

24   law."  Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show

25   the absence of a genuine issue of material fact with respect to an essential element of the non-

26   moving party's claim, or to a defense on which the non-moving party will bear the burden of

27   persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

28   Once the movant has made this showing, the burden then shifts to the party opposing

9

United States District Court
Northern District of California

1  summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id.*

2  "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the

3  substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v.*

4  *Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). The non-moving party has the burden of

5  identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan*

6  *v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Thus, it is not the task of the court to scour the

7  record in search of a genuine issue of triable fact. *Id.* at 1229; *see Carmen v. S.F. Unified Sch.*

8  *Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

9         A party need not present evidence to support or oppose a motion for summary judgment in

10  a *form* that would be admissible at trial, but the *contents* of the parties' evidence must be amenable

11  to presentation in an admissible form. *See Fraser v. Goodale*, 342 F.3d 1032, 1036−37 (9th Cir.

12  2003). Conclusory, speculative testimony in affidavits and arguments in moving papers are

13  insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co.,*

14  *Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). On summary judgment, the court draws all

15  reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378

16  (2007), but where a rational trier of fact could not find for the non-moving party based on the

17  record as a whole, there is no "genuine issue for trial" and summary judgment is appropriate.

18  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). In considering Travelers'

19  motion, the Court therefore draws all reasonable inferences in favor of Defendants.

20              **2.   Travelers' Motion is Procedurally Proper and Ripe for Consideration**

21         The Federal Rules of Civil Procedure specifically authorize motions for partial summary

22  judgment, by which a party seeks to resolve only "part of" a claim or defense. Fed. R. Civ. P.

23  56(a). Rule 56 further provides that even "[i]f the court does not grant all the relief requested by

24  the motion, it may enter an order stating any material fact—including an item of damages or other

25  relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R.

26  Civ. P. 56(g). Here, Travelers seeks summary adjudication of the issues of "the existence and

27  terms of the contracts," and whether Defendants are liable for certain losses Travelers sustained as

28  a result of paying certain claims pursuant to contracts between the parties. *See* Reply re MPSJ at

1−2.  Travelers does not seek to resolve the existence or amounts of any credits or setoffs due to

Defendants as a result of contract funds paid to Travelers, nor does it seek entry of a final,

enforceable judgment.  *Id.* at 1, 4−5.[8]  Summary adjudication of the discrete issues that Travelers

seeks to resolve is permissible under Rule 56.

Defendants contend that the Court should deny Travelers' motion because a "series of

partial summary judgments will require the parties to re-educate the Court on [the facts of the

case] every time Travelers files another motion for partial summary judgment."  Opp'n to MPSJ at

5−6.  The Case Management and Pretrial Order entered in this case provides that "[n]o party may

file more than one (1) summary judgment motion without leave of Court."  *See* Case Management

and Pretrial Order (dkt. 33) § III.  Leave to file additional summary judgment motions will not be

granted absent a showing of good cause, and the Court would certainly consider the efficiency

considerations that Defendants raise here if Travelers seeks such leave.[9]  As for the present

motion, however, the Court finds that addressing the issues raised by Travelers may well promote

the efficient resolution of this action, and that the potential advantages of early resolution of those

issues outweighs any duplication of judicial resources that could result.

Defendants also assert, without significant explanation, that they have "not to date

investigated the facts and circumstances regarding Travelers' payments of all the claims listed in

the motion," that they lack information regarding the recent $1.94 million payment that Travelers

received on one of the bonded projects, and that the Court should therefore defer consideration of

Travelers' motion or deny it without prejudice under Rule 56(d).  Opp'n to MPSJ at 2.

---

[8] Travelers' motion appears to have originally sought a more conclusive outcome.  *See* Proposed Order (dkt. 58-1) ¶ 3 (stating that "Travelers is entitled to recover money damages from Defendants" for the specified paid claims); *id.* ¶ 4 (stating that Defendants are entitled to a credit of $140,000).  The Court construes Travelers' reply brief as withdrawing any claim for summary adjudication of issues beyond those set forth above.

[9] Travelers' motion reserves its right to seek damages for additional claims not yet resolved as of the date of the motion, but does not explicitly discuss any intent to file additional motions for summary judgment (as opposed to resolving such claims at trial).  *See* MPSJ at 18.  Travelers' proposed order, however, would grant Travelers leave to file an additional motion for summary judgment at a later date.  *See* Proposed Order ¶ 6.  The Court declines to grant such leave at this time.  If at some later date Travelers believes that circumstances warrant allowing a second motion for summary judgment as an exception to the general rule set forth in the case management order, Travelers may seek leave to do so at that time.

United States District Court
Northern District of California

1    Rule 56(d) provides that the Court may defer, deny, or take other appropriate action on a

2    motion for summary judgment if "a nonmovant shows by affidavit or declaration that, for

3    specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).

4    In light of Travelers' position that it does not seek summary judgment on any setoffs or credits to

5    which Defendants may be entitled, *see* Reply re MPSJ at 4−5, the $1.94 million payment—and

6    any lack of information regarding that payment—is not relevant to the outcome of the motion,

7    because it does not affect the nature of the parties' contracts or payments that Travelers made to

8    third parties under those contracts.  As for Defendants' failure to investigate Travelers' payment of

9    claims, Defendants' opposition brief does not identify any affidavit or declaration, as required by

10   Rule 56(d), specifying reasons why they have not conducted such an investigation, nor does the

11   brief itself specify any particular reason for Defendants' lack of information.

12   The declaration of Keith Odister includes one sentence, not specifically discussed in

13   Defendants' brief opposing summary judgment, stating that "K.O.O. has not received a full

14   explanation of the basis for Travelers' decision to make the payments for which it now seeks

15   reimbursement and K.O.O. disputes the propriety and necessity of the payments made by

16   Travelers."  Odister Decl. ¶ 4.[10]  Absent any explanation of what steps, if any, Defendants have

17   taken to obtain the information in question, or what relevant information Defendants believe that

18   Travelers has withheld, the Court does not find this conclusory assertion sufficient to defer

19   consideration of Travelers' motion under Rule 56(d).

20   **3.  Travelers is Entitled to Partial Summary Judgment as to Certain Issues**

21   There is no dispute that the parties agreed to the indemnity contracts at issue.  *See* Answer

22   ¶¶ 9, 10, 12, 13 (admitting allegations that the parties executed the contracts).  Each agreement

23   provides Travelers with broad discretion to settle claims for payment.  Burgett Decl. Ex. J (K.O.O.

24   Agreement) § 5 (granting Travelers "the right, in its sole discretion, to determine for itself and

25   [Defendants] whether any claim . . . shall be paid, compromised, settled, defended, or appealed,"

26

27   ───────────────

28   [10] The Court is not required to consider evidence in the record that is not cited in the parties' arguments, but nevertheless considers this paragraph of Odister's declaration, which does not alter the outcome.  *See* Fed. R. Civ. P. 56(c)(3).

1    and providing that Travelers' "determination shall be final, binding, and conclusive on

2    [Defendants]"); *id.* Ex. K (Total Team 2004 Agreement) § 4 (same); FAC Ex. C (Total Team 2010

3    Agreement) § 4 (same).  Defendants acknowledge that the agreements "give[] Travelers great

4    power to exercise its discretion."  Opp'n to MPSJ at 11.  Each agreement also provides that an

5    "itemized, sworn statement" by a Travelers employee constitutes prima facie evidence of

6    Defendants' liability to indemnify Travelers.  Burgett Decl. Ex. J § 5; *id.* Ex. K § 3; FAC Ex. C

7    § 3.  Travelers' authority under the contracts is subject to an implied covenant of good faith and

8    fair dealing.  *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464,

9    482−83 (1996).

10          Defendants' arguments regarding the prima facie evidence provisions of the indemnity

11   agreements are somewhat contradictory.  For example, immediately before quoting that language

12   of the 2004 Total Team agreement, Defendants state that it "purports to give Travelers unbridled

13   discretion to determine the amount and existence of [Defendants'] liability."  Opp'n to MPSJ at 9.

14   But immediately after quoting the language, Defendants assert that "[p]*rima facia* evidence is not

15   conclusive or controlling; it is subject to rebuttal."  *Id.* at 10.  The latter statement is correct—the

16   prima facie evidence clause establishes a standard for what Travelers must show to meet its initial

17   burden, but allows Defendants to rebut such a showing with evidence to the contrary.  *See Fallon*

18   *Elec. Co., Inc. v. Cincinnati Ins. Co.*, 121 F.3d 125, 128−29 (3d Cir. 1997); *Great Am. Ins. Co. v.*

19   *Roadway Eng'g Works, Inc.*, Civ. No. 1:16-00070 WBS SKO, 2016 WL 5157651, at *3 (E.D. Cal.

20   Sept. 21, 2016).  The clause therefore does *not* "purport[] to give Travelers unbridled discretion,"

21   *see* Opp'n to MPSJ at 9, because Defendants can rebut Travelers' prima facie showing by

22   introducing evidence that the amount claimed is incorrect (i.e., that Travelers did not actually pay

23   what it claims to have paid) or that Travelers acted in bad faith in making such payments.

24          Courts have routinely held that sort of burden shifting provision to be valid and

25   enforceable in indemnity contracts.  *E.g.*, *Travelers Cas. & Sur. Co. of Am. v. Dunmore*, No. 2:07-

26   cv-02493-TLN-DB, 2016 WL 6611184, at *2 (E.D. Cal. Nov. 9, 2016) (holding a contractual

27   prima facie evidence clause enforceable under California law); *Great Am. Ins.*, 2016 WL 5157651,

28   at *3−6 (same); *Gen. Ins. Co. of Am. v. Singleton*, 40 Cal. App. 3d 439, 443−44 (1974) (same); *see*

United States District Court
Northern District of California

*also Fallon Elec.*, 121 F.3d at 129 (collecting authority from various jurisdictions).  Defendants cite no authority to the contrary.

As an "itemized, sworn statement by an employee of [Travelers]," Burgett's declaration meets the standard set by the parties' agreements for prima facie evidence of liability.  *See* Burgett Decl. ¶ 9 & Ex. J (K.O.O. Agreement) § 5; *id.* Ex. K (2004 Total Team Agreement) § 3; FAC Ex. C (2010 Total Team Agreement) § 3.[11]  Defendants argue that Travelers has not provided "evidence to support . . . the validity and reasonableness of its decision to the claims," *see* Opp'n to MPSJ at 10, but under the parties' contracts, Burgett's itemized declaration is sufficient evidence to shift the burden to Defendants to show that the payments were invalid or made in bad faith.  *See, e.g.*, *Singleton*, 40 Cal. App. 3d at 443−44.

Odister's conclusory declaration that "many, if not most" of Travelers' payments to subcontractors were excessive, and that "many" payments were made before they were due, does not demonstrate that Travelers acted in bad faith and is not sufficient to defeat summary judgment on the issue of whether the payments were legitimate.  *See* Odister Decl. ¶ 3; *Thornhill Publ'g*, 592 F.2d at 738 (holding "conclusory and speculative affidavits that fail to set forth specific facts" insufficient to defeat summary judgment).  This case is not comparable to *Arntz*, where a California appellate court affirmed a trial court's finding that certain costs were incurred in bad faith because the surety had been "presented with overwhelming proof that those expenses were 'unnecessary and unwarranted.'"  *Arntz*, 47 Cal. App. 4th at 483.  To the contrary, Defendants here submit no evidence of what information Travelers had when it paid the claims at issue, despite Travelers' undisputed evidence that it "informed Defendants of each and every claim against the Bonds and provided Defendants with an opportunity to respond to or resolve the claims before Travelers paid the claimants."  *See* Burgett Decl. ¶ 11.

No rational jury could find on this record that Defendants met their burden to rebut Travelers' prima facie showing of liability, either by showing that Travelers did not actually incur

---

[11] Because the agreements specifically authorize an itemized declaration as prima facie evidence of liability, the omission of a check or other payment record for the July 11, 2016 payment to WR Robbins Co. from the exhibit including such records for the other payments—an issue not discussed by either party—does not alter the outcome.  *See* Burgett Decl. ¶ 9 & Ex. O.

the losses it claims, or by showing that it did not pay the claims in good faith. Travelers' motion for partial summary judgment is therefore GRANTED as to the issue of whether Defendants are liable for the payments itemized in paragraph nine of Burgett's declaration.[12] The Court holds that Travelers has established Defendants' liability for those payments, but does not resolve at this time the issue of what credits Defendants may claim against such liability. The Court also finds the issue of prejudgment interest to be premature for summary judgment in light of the credits that remain to be determined.

The Court declines to grant summary judgment as to liability based on claims first raised in Travelers' reply brief and Brittany Rose's declaration accompanying that brief. As a general rule, parties may not raise arguments for the first time in a reply. *See McMillan v. United States*, 112 F.3d 1040, 1047 (9th Cir. 1997). Defendants had no opportunity to submit evidence to rebut Travelers' contention that it properly paid those claims. Summary judgment is therefore DENIED as to the claims itemized in paragraph ten of Rose's declaration, without prejudice to Travelers seeking indemnity for those claims at trial.

### B.   Motion for Attachment

#### 1.   Legal Standard

Under Rule 64 of the Federal Rules of Civil Procedure, a party may seek remedies to secure satisfaction of a potential judgment as allowed by the law of the state where the court is situated. Fed. R. Civ. P. 64(a). Attachment is among the remedies authorized by Rule 64. Fed. R. Civ. P. 64(b).

---

[12] Portions of Defendants' opposition could be construed as arguing that the contracts at issue are unconscionable, although Defendants do not clearly contend that the contracts are invalid or unenforceable. *See, e.g.*, Opp'n to MPSJ at 11 ("Another example of the unconscionability of the General Indemnity Agreement would be the provision regarding the Trust Fund."). Under California law, "[i]n order to render a contract unenforceable under the doctrine of unconscionability, there must be both a procedural and substantive element of unconscionability." *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 (2000)). "Procedural unconscionability 'concerns the manner in which the contract was negotiated and the circumstances of the parties at that time.'" *Id.* (quoting *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999)). Defendants here submit no evidence concerning the negotiation of the agreements, and thus cannot prevail on an unconscionability argument, regardless of the substantive terms of the contracts.

United States District Court
Northern District of California

United States District Court
Northern District of California

California law allows for attachment "in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars." Cal. Civ. Proc. Code § 483.010(a). Attachment is not allowed "on a claim which is secured by any interest in real property," or on a claim against a natural person unless it "arises out of the conduct by the defendant of a trade, business, or profession." *Id.* § 483.010(b), (c). A court must find all of the following before issuing a right to attach order:

> (1) The claim upon which the attachment is based is one upon which an attachment may be issued.
>
> (2) The plaintiff has established the probable validity of the claim upon which the attachment is based.
>
> (3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
>
> (4) The amount to be secured by the attachment is greater than zero.

*Id.* § 484.090. "An attachment may be issued . . . whether or not other forms of relief are demanded." *Id.* § 483.010(d).

Based on the issues raised in the parties' arguments, the analysis below focuses primarily on whether the amount claimed is "fixed or readily attainable" and whether Travelers has established the probable validity of its claims. The requirements not discussed below are not in dispute, and the Court finds those requirements to be satisfied by the evidence submitted with Travelers' motion.

### 2. Travelers' UCC Filing Statement Is Not Relevant

Defendants briefly suggest, with no citation to authority, that "[t]he need for the writ is questionable given that Travelers filed a UCC-1 Filing Statement with the California Secretary of State . . . in which it attached a copy of K.O.O.'s General Agreement of Indemnity." Opp'n to Attachment at 2, 3−4 & Ex. A. California law explicitly states that a party may seek attachment "whether or not other forms of relief are demanded." Cal. Civ. Proc. Code § 483.010(d). Absent any authority to the contrary, the Court finds Travelers' UCC filing statement irrelevant to its motion for attachment.

### 3.   Travelers' Demand for Collateral Is "Fixed or Readily Attainable"

Defendants argue that Travelers cannot obtain attachment for its $2,000,000 collateral demand, because that amount is merely "guesstimate" and is not supported by analysis of Travelers' likely losses on open claims and potential recovery or other credits on projects associated with those claims.  Opp'n to Attachment at 2−3.  According to Defendants, the $2,000,000 therefore does not represent a "fixed or readily ascertainable amount" as required by section 483.010(a).  If Travelers were seeking attachment of that amount based only on its potential losses on open claims, Defendants' arguments might be persuasive.

Defendants fail to address, however, the contractual provision requiring Defendants to post collateral upon Travelers' demand.  The K.O.O. Agreement, which governs all of the open claims identified in Burgett's declaration, *see* Burgett Decl. ¶ 14 & Exs. B−E, G−I, provides that Defendants "agree to pay [Travelers], upon demand, an amount sufficient to discharge any claim or demand made against [Travelers] on any Bond," which "sums may be used by [Travelers] to pay the claim or be held by [Travelers] as collateral security against any loss, claim, liability or unpaid premium on any Bond."  *Id.* Ex. J § 6.  By the terms of the contract, Travelers' right to demand collateral is not limited to amounts necessary to cover anticipated *net* loss, as Defendants' arguments would suggest, but instead empowers Travelers to demand collateral "sufficient to discharge any claim."  *See id.*

Burgett's declaration itemizes open claims on K.O.O. bonds totaling $2,025,784.05. Burgett Decl. ¶ 14.[13]  Defendants have provided no evidence showing that amount to be inaccurate.  Under the K.O.O. Agreement, K.O.O. is obligated to pay Travelers an amount sufficient to discharge those claims upon demand.  Travelers' demand for $2,000,000 collateral falls within its rights under the contract and establishes a fixed amount for its claim.  The Court therefore concludes that Travelers has established the probable validity of its claim for collateral and is entitled to attachment on that claim, and GRANTS Travelers' motion as to those funds.

---

[13] Burgett also states and includes evidence that Travelers made repeated demands for collateral. Burgett Decl. ¶¶ 16, 18, 19, 21 & Exs. Q, R, T, U.

17

### 4.  The Court Declines to Authorize Attachment for Fort Hunter Liggett Claims

Turning to the attachment that Travelers seeks for claims it has already paid, the Court first addresses the claims governed by the 2010 Total Team Agreement and the rider binding K.O.O. to indemnify Travelers for the Fort Hunter Liggett project governed by that agreement.  Defendants submit evidence to show, and Travelers does not dispute, that Travelers received a payment of approximately $1.94 million for another Total Team project—which K.O.O. did not indemnify— after Travelers filed its present motions.  *See* Brooks Decl. ¶ 2 & Ex. B.  According to Defendants, that payment is sufficient to cover the claims that Travelers paid on the Fort Hunter Liggett project.  Opp'n to Attachment at 3.

Travelers argues and submits evidence to show that Travelers has a significant net loss on other projects governed by the 2010 Total Team Agreement even after accounting for the recent payment, and contends that the payment therefore does not affect the amount that K.O.O. owes for the Fort Hunter Liggett project.  Reply re Attachment at 3; Rose Decl. ¶¶ 4−6 & Exs. AA, BB. Although Travelers may well be correct, the timing of the payment and the briefing schedule for this motion did not afford Defendants an opportunity to respond to that evidence if, for example, Defendants have evidence or authority to show that the funds Travelers received should have been allocated to claims on the Fort Hunter Liggett project before being applied to other outstanding liabilities.  Under the circumstances, the Court is not satisfied that Travelers has established the probable validity of these claims, and DENIES without prejudice Travelers' motion to attach property based on payments made for the Fort Hunter Liggett project.

Because Travelers has not identified which of the expenses incurred in investigating claims apply to which bonds and projects, *see* Burgett Decl. ¶ 13, the motion is also DENIED without prejudice as to those amounts at this time.

### 5.  Travelers Is Entitled to Attachment for the K.O.O. Claims in Its Motion

Defendants do not articulate any reason why any credit to which they might be entitled for the $1.94 million payment should apply to claims governed by the K.O.O. Agreement.  To the contrary, Defendants only discuss that credit as compared to the amount owed on the Fort Hunter Liggett project, *see* Opp'n to Attachment at 3, and argue in their opposition to summary judgment

18

that losses and credits should be considered in the context of each "bonding program," i.e., separating claims governed by the K.O.O. Agreement from claims governed by the 2004 and 2010 Total Team Agreements, *see* Opp'n to MPSJ at 6−7.  The Court therefore does not find that payment for a Total Team project relevant to whether Travelers can obtain attachment for losses incurred on K.O.O. projects.[14]

Defendants' primary argument regarding the K.O.O. claims—i.e., claims for projects other than Fort Hunter Liggett—is that Travelers has not provided sufficient evidence that it paid those claims in good faith.  *See* Opp'n to Attachment at 5−6.  As discussed above in the context of summary judgment, Burgett's itemized declaration constitutes prima facie evidence of liability under the terms of the parties' agreement.  The Court finds that prima facie showing sufficient to establish the probable validity of Travelers' claims as to those payments.  Odister's conclusory declaration that "many" payments were excessive or paid early is not sufficient to defeat that showing.  Travelers is therefore entitled to attachment based on those losses.[15]  As Defendants do not dispute Travelers' claim for or calculation of prejudgment interest under section 3289 of the California Civil Code, the Court is satisfied that Travelers has established the probable validity of that portion of its claims as well.

Setting aside (1) the claims paid on the Fort Hunter Liggett project, (2) the $170,000 reimbursement that K.O.O. paid for that project, and (3) calculations of interest associated with those costs and credits, Travelers' motion for attachment is GRANTED as to paid claims totaling $724,428.85 and interest through September 30, 2016 totaling $18,764.96.  *See* Burgett Decl. ¶¶ 9, 25.  For the reasons discussed above in the context of summary judgment, Travelers' motion for

---

[14] Similarly, Odister's statement that K.O.O. paid "various parties" directly for some work on the Fort Hunter Liggett project is not relevant to claims governed by the K.O.O. Agreement.  *See* Odister Decl. ¶ 2.

[15] Defendants' opposition to this motion does not repeat the argument in their opposition to summary judgment that liability cannot be established until the total profits and losses of the "bonding program" as a whole are known.  To the extent that Defendants intended to include such an argument here, it is not persuasive: under the terms of the K.O.O. Agreement, Travelers is "entitled to *immediate* reimbursement for any and all payments made by it under the belief that it was necessary or expedient to make such payments."  Burgett Decl. Ex. J § 5.  Waiting until a project is complete—much less *all* of the projects governed by the K.O.O. Agreement—to assess liability would be inconsistent with that provision requiring immediate reimbursement.

attachment is DENIED without prejudice as to claims first discussed in its reply brief and Brittany

Rose's declaration, because Defendants had no opportunity to rebut those claims.

* * *

Adding together the $2,000,000 for collateral, $724,428.85 for paid claims, and $18,764.96

for interest, Travelers' motion for attachment is GRANTED as to liabilities totaling

$2,743,193.81.  A version of Travelers' proposed order modified to reflect that total will be filed

separately, listing the categories of property to be attached.  This determination is based on the

probable validity of Travelers' claims, but does not conclusively resolve any factual issues that

may be disputed at trial except as set forth separately above in the context of Travelers' motion for

summary judgment.  Travelers' motion for attachment is DENIED without prejudice as to the

remainder of the funds that it seeks.

## IV.    CONCLUSION

For the reasons discussed above, each of Travelers' motions is GRANTED in part and

DENIED in part.  Summary judgment is granted as to Defendants' liability for the payments

itemized at paragraph nine of Jamie Burgett's declaration, without resolving any credits to which

Defendants may be entitled.  Travelers' request for attachment is granted as to liabilities totaling

$2,743,193.81, and denied without prejudice as to the remaining funds that Travelers seeks.

**IT IS SO ORDERED.**

Dated: December 16, 2016

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

20