UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, Plaintiff, v. K.O.O. CONSTRUCTION, INC., et al., Defendants. | Case No. 16-cv-00518-JCS<br><br>**ORDER DENYING MOTION TO INTERVENE AND GRANTING MOTION TO AMEND ATTACHMENT ORDER**<br><br>Re: Dkt. Nos. 88, 98 |
|---|---|

## I. INTRODUCTION

In this diversity jurisdiction action under California law, Plaintiff Travelers Casualty and Surety Company of America ("Travelers") alleges that Defendants K.O.O. Construction, Inc. ("K.O.O.") and Keith Odister, K.O.O.'s president and CEO, breached contractual indemnity obligations relating to construction projects. The Court previously granted in part and denied in part Travelers' motion for partial summary judgment and motion for attachment. *See* Order re Mot. for Partial Summ. J. & Mot. for Attach. ("December Order," dkt. 75).[1] Travelers now moves to modify the attachment order to reach property that it has since discovered is held by the Keith O. Odister Trust (the "Odister Trust"). Great American Insurance Company ("Great American," also referenced by the parties as "GAIC") moves to intervene based on interest it claims to have in the property at issue. The Court held a hearing on May 26, 2017. For the reasons discussed below, Great American's motion to intervene is DENIED, and Travelers' motion to amend the attachment order is GRANTED.[2]

---

[1] *Travelers Cas. & Sur. Co. of Am. v. K.O.O. Constr., Inc.*, No. 16-cv-00518-JCS, 2016 WL 7324988 (Dec. 16, 2016). Citations herein to page numbers in the December Order refer to the version filed in the Court's ECF docket.
[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Procedural History

Travelers filed this action in January of 2016, and filed a First Amended Complaint on February 29, 2016. *See* Compl. (dkt. 1); 1st Am. Compl. (dkt. 11). Defendants filed counterclaims in April of 2016 but amended and later voluntarily dismissed their counterclaims after Travelers moved to dismiss them. *See* dkts. 16, 41, 53.

Travelers filed a motion for partial summary judgment (dkt. 58) and a motion for a right to attach order (dkt. 59) on August 26, 2016. After granting a series of stipulations continuing briefing deadlines and the hearing date for those motions, the Court heard argument on December 16, 2016, and granted in part and denied in part both motions. At that hearing, counsel for Defendants suggested that Great American might have an interest in certain property at issue, but Great American made no appearance in the action at that time.

The Court held that Travelers sufficiently established Defendants' liability as to certain claims that Travelers paid on bonded construction projects, but did not resolve other alleged grounds for liability or any credits to which Defendants might be entitled. December Order at 14−15. The Court also held that Travelers was entitled under California law to attach $2,743,193.81 based on the probable validity of its claims that Defendants breached an indemnity agreement by failing to provide required collateral and failing to indemnify Travelers for certain payments. *Id.* at 17−20. The Court issued one order explaining its reasoning, *see generally id.*, and a separate order setting forth categories of K.O.O.'s and Odister's property subject to attachment, including but not limited to five parcels of real property and "any other real property in which [Odister] holds a right, title or interest." *See* dkt. 76 ¶ 6.a. The Clerk later issued two writs of attachment, one in the name of each defendant, incorporating the list of property set forth by the Court. *See* dkts. 81, 82.

On Friday, February 3, 2017, the Court received a letter (dkt. 83) from Odister requesting that certain accounts be released from attachment in order to allow K.O.O. to continue to operate and pay its employees, which the Court construed as an emergency motion. The Court held a telephonic hearing the same day, ordered the parties to meet and confer to attempt to negotiate a

1  resolution, and set a second hearing for Monday, February 6, 2017, which the Court invited Great
2  American to join. Civil Minute Order (dkt. 83). Counsel for Travelers, Defendants, and Great
3  American appeared telephonically at the second hearing and reported that they had not reached a
4  resolution, and the Court denied the emergency motion. Civil Minute Order (dkt. 87).

Travelers filed its present motion to amend the attachment order on March 17, 2017. Great American moved to intervene on April 14, 2017. Pending a decision on the motion to intervene, the Court granted Great American leave to file a brief in opposition to Travelers' motion and continued the hearing on Travelers' motion to allow both motions to be heard together.

**B.    Motion to Amend Previous Order[3]**

**1.    Travelers' Motion to Amend Right to Attach Order**

Travelers moves to amend the previously-issued right to attach order in two respects. First, Travelers seeks to include property owned by the Odister Trust, which Travelers contends is Odister's revocable living trust to which he transferred four of the parcels of real property included in the previous attachment order. Mot. to Amend (dkt. 88) at 1−2, 3−4. Travelers asserts that it discovered that the properties were held by the Odister Trust after issuance of the previous attachment order, but does not claim that Odister transferred the properties for the purpose of evading attachment; to the contrary, the declaration and deeds that Travelers submits with its motion show that Odister transferred the properties to the Odister Trust several years before the start of this litigation. *See id.* at 1, 3−4; Van Ornum Decl. (dkt. 88-1) ¶ 3 & Exs. A−G. Second, Travelers seeks to add to the attachment order three additional properties that it discovered were owned by the Odister Trust. Mot. to Amend at 2−3.

According to Travelers, California law treats property held in a revocable trust as property of the settlor, allowing creditors of the settlor to access such property. *Id.* at 4−5. Travelers does not submit actual trust documents, which it contends Defendants have refused to produce, but

---

[3] Pursuant to the Court's order dated April 17, 2017 (dkt. 100), Great American filed an opposition (dkt. 111) to Travelers' motion, and Travelers filed a reply (dkt. 112) to that opposition. Because this order denies Great American's motion to intervene, the Court does not reach Great American's arguments on Travelers' motion. Those arguments are therefore not recounted here or addressed in the analysis section below.

3

relies instead on Odister's certifications on the transfer deeds and in a document submitted to a financial institution as evidence that the Odister Trust is revocable. *Id.* at 1−2, 4 (citing Van Ornum Decl. ¶¶ 2, 4, 7 & Ex. H). Travelers contends that property of the Odister Trust is therefore subject to attachment, and notes that Defendants did not contest that the properties at issue were subject to attachment either in response to Travelers' first motion for attachment or in Odister's letter requesting that the Court release K.O.O.'s payroll accounts. *Id.* at 5−6. According to Travelers, all of the property at issue was already subject to the previous attachment order, but amendment is warranted to clarify its scope. *Id.* at 6.

### 2. Defendants' Opposition

Defendants primarily oppose Travelers' motion on the grounds that, according to Defendants, whether revocable trust property is subject to a writ of attachment is an issue of first impression in California, and in the absence of authority directly on point, Travelers has not met its burden to show that it is entitled to attachment. Opp'n to Amendment (dkt. 90) at 4−7. Defendants note Travelers' failure to provide the trust documents, and assert that Defendants agreed to produce those documents subject to a protective order, but "Travelers has yet to provide a draft of such an agreement" as of the filing of Defendants' opposition. *Id.* at 1−2. Defendants also argue that Travelers' motion should be denied because Travelers failed to conduct due diligence to determine the ownership of the property at issue before filing its first motion for attachment, and accuse Travelers of "subtrafuge" (sic) for "subtly attempt[ing] to paint the creation of the Trust and the transfer of the real property assets into the Trust as being part of a scheme to shield assets from the reach of creditors," when Odister instead created the Trust and transferred property to it as routine estate planning well before the events at issue. *Id.* at 2, 3−4.

### 3. Travelers' Reply

Travelers argues that California law clearly requires the Court to disregard a revocable trust, although it cites no case applying that rule in the context of attachment. Reply re Amendment (dkt. 95) at 1−2. According to Travelers, allowing attachment of revocable trust assets follows from case law allowing collection of a judgment debt from such assets. *Id.* at 2−4. Travelers also contends that Defendants do not dispute that the Odister Trust is revocable or that

4

Odister transferred the property at issue to the trust, and that Odister effectively admitted that the property is subject to attachment in his letter to the Court seeking release of the payroll accounts. *Id.* at 1, 4−5.

### C. Motion to Intervene by Great American

#### 1. Great American's Motion

Great American seeks to intervene in this action to protect its purported interest in real property conveyed to Great American by deeds of trust, as well as other assets required to pay subcontractors and suppliers on projects bonded by Great American. *See* Mot. to Intervene (dkt. 98) at 3. Great American relies on Rule 24(a)(2) of the Federal Rules of Civil Procedure, which provides that a party may intervene by right if it "'claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.'" *Id.* at 4 (quoting Fed. R. Civ. P. 24(a)(2)). According to Great American, it satisfies the four elements required by the Ninth Circuit for intervention under that rule because: (1) it timely moved to intervene after negotiations among the parties broke down and Travelers filed its present motion to amend the attachment order; (2) it "has deeds of trusts and perfected assignments and rights under the indemnity agreement and common-law" related to the property at issue; (3) attachment of the property and disposition of this action could affect those rights; and (4) "the existing parties have interests that diverge from GICC's [sic] interests and may interfere with of [sic] violate GAIC's rights." *Id.* at 4−5 (citing *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011)).

Great American attaches a proposed intervening complaint for declaratory relief, seeking a declaration that its rights are superior to Travelers' with respect to assets that Defendants assigned to Great American, that funds to be paid on contracts bonded by Great American are not subject to attachment, and that any order or writ issued by this Court "should not impair GAIC's rights." *Id.* Ex. A ("Proposed Intervening Compl.").

Great American's motion is supported by a declaration of its divisional vice president Timothy Martin, who states that Great American entered an indemnity agreement with Defendants

5

in 2014 and later advanced more than two million dollars to allow K.O.O. to complete projects bonded under the indemnity agreement when K.O.O. "was experiencing cash flow difficulties." Martin Decl. (dkt. 98-4) ¶¶ 2−5. Martin states that Defendants pledged certain assets—including each parcel of real property included in Travelers' proposed amended attachment order—to Great American as collateral for that advance, referencing deeds of trust attached to the proposed intervening complaint. *Id.* ¶¶ 6−8; Proposed Intervening Compl. Ex. B. Martin also states that if Travelers attaches funds related to ongoing projects bonded by Great American, such attachment could cause K.O.O. to default on those projects, and that the parties have not been able to reach a forbearance agreement. Martin Decl. ¶¶ 9−11.

Defendants do not oppose Great American's motion to intervene. *See* Non-Opp'n (dkt. 109).

### 2. Travelers' Opposition to Intervention

Travelers opposes Great American's motion to intervene, arguing that Great American has no interest that sufficiently relates to the subject matter of this litigation—i.e., Travelers' indemnity agreements with Defendants—relying on Ninth Circuit authority holding that a creditor of a defendant cannot intervene under Rule 24(a)(2) merely on the basis that an adverse judgment against the defendant would impair the creditor's ability to collect a debt. Opp'n to Intervention (dkt. 110) at 2−3, 4 (citing *United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004)). Travelers also contends that Great American does not allege a sufficiently concrete dispute to pursue a claim for declaratory relief. *Id.* at 3−4.

### 3. Great American's Reply

Great American argues that its ownership interests in property that Travelers seeks to attach differentiate this case from *Alisal*, where the proposed intervenor was a judgment creditor with a more generalized interest in collecting a debt. Reply re Amendment (dkt. 113) at 2−3. Great American cites California court decisions permitting intervention by parties that it contends had comparable interests to Great American's interests here, and argues that Rule 24 on its face provides sufficient authority for Great American's intervention. *Id.* at 3.

6

## III. ANALYSIS OF MOTION TO INTERVENE

### A. Legal Standard

In order to establish a right to intervene under Rule 24(a)(2),[4] a party must demonstrate that four elements are satisfied:

> (1) the application for intervention must be timely;
>
> (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action;
>
> (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and
>
> (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001) (citing *Nw. Forest Resource Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996)) (line breaks added). The Ninth Circuit generally "construe[s] Rule 24(a) liberally in favor of potential intervenors," and "review is guided primarily by practical considerations, not technical distinctions." *Id.* at 818 (citations and internal quotation marks omitted). Even so, "[t]he party seeking to intervene bears the burden of showing that all the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

### B. Great American Is Not Entitled to Intervention of Right

The parties' arguments here turn on whether Great American meets the second and third criteria for intervention of right: a "significantly protectable" interest in the subject of the action, such that Great American's ability to protect that interest might be impaired or impeded by the disposition of the action. *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 817.

The Ninth Circuit has generally rejected arguments that a defendant's creditors whose interests in collecting a debt might be impaired by an adverse judgment have a right to intervene under Rule 24(a). In *Alisal*, proposed intervenor Silverwood Estates Development had previously won a substantial judgment against defendant Alisal Water Corporation, and argued that a decision

---

[4] Great American has not moved for permissive intervention under Rule 24(b)(1).

7

awarding damages to the United States for Alisal's environmental violations could impair Silverwood's interest in collecting on its judgment. *See Alisal*, 370 F.3d at 918−19. Further complicating matters, the district court in the environmental enforcement action had "appointed a receiver to manage Alisal's drinking water systems and oversee their possible sale," and "barred enforcement of any action or lien against the receiver, or any property subject to the receivership, without first obtaining the court's approval." *Id.* at 918. The Ninth Circuit affirmed the denial of Silverwood's motion to intervene, holding that Silverwood's interest in "the prospective collectability of a debt" was "several degrees removed from overriding public health and environmental policies" at issue in the case, and thus "not sufficiently related to" the subject matter of the case at hand. *Id.* at 920. In so holding, the panel relied on an earlier Ninth Circuit decision rejecting the premise that Rule 24(a)(2) extends to "all persons with potential claims against any party . . . on the ground that the outcome . . . may increase or decrease the collectibility of their claims," *Hawaii-Pac. Venture Capital Corp. v. H.B. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977), and declined to follow out-of-circuit and district court decisions "suggest[ing] that an interest in property that is impacted by litigation may trigger a right to intervention," *Alisal*, 370 F.3d at 920 n.3 (declining to follow *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970); *Ghazarian v. Wheeler*, 177 F.R.D. 482, 486−87 (C.D. Cal. 1997)).

*Alisal* makes clear that Great American cannot intervene in this case based merely on concerns that Travelers' attachment or collection efforts would affect Great American's ability to collect on Defendants' separate obligations to Great American. Great American contends, however, that its ownership interests in certain property afford it a sufficient interest in these proceedings to warrant intervention. First, Great American asserts that, in exchange for funds advanced by Great American, "Odister pledged through Deeds of Trust his interest in certain real property, properties that Travelers is attempting to attach." Mot. to Intervene at 3. Second, Great American argues that certain funds held by K.O.O. and slated for projects bonded by Great American "are subject to the trust provision of GAIC's indemnity agreement; and Travelers cannot attach these funds as they are not property of KOO." *Id.* at 3.

California courts have permitted intervention by parties with an ownership interest in

8

property that had actually been attached. In *Arcata Publications Group v. Beverly Hills Publishing Company*, a California appellate court affirmed discharge of an attachment lien where the plaintiff had attached certain real property owned by the defendant, the defendant thereafter executed a deed of trust granting Bank of America an interest in the property, and Bank of America later intervened to seek discharge of the lien on the basis that the plaintiff failed to record an extension of the writ of attachment as required by law. *See generally Arcata Publ'ns*, 154 Cal. App. 3d 276 (1984). In an earlier case, an appellate court stated "the rule that a third party claimant may intervene in an action where the property he claims as owner is attached; and that he has a sufficient interest therein to enable him to intervene under section 387 [of the California] Code of Civil Procedure." *Hi-Valley Dev. Corp. v. Walters*, 223 Cal. App. 2d 778, 784 (1963) (citing *Berghauser v. Golden State Orchards*, 208 Cal. 550 (1929); *Dennis v. Kolm*, 131 Cal. 91 (1900); *Carter v. Garetson*, 56 Cal. App. 238 (1922)). In all cases such cases of which this Court is aware, however, the property had already been attached when the party claiming ownership intervened. *See Berghauser*, 208 Cal. at 551; *Dennis*, 131 Cal. at 92; *Arcata Publ'ns*, 154 Cal. App. 3d at 278; *Hi-Valley*, 223 Cal. App. 2d at 780; *Carter*, 56 Cal. App. at 238−39.

Here, Great American does not contend that it owns any property already attached by Travelers, nor does it cite any authority allowing intervention based on the *possibility* that a party will attach property owned by a proposed intervenor. Even assuming for the sake of argument that the California decisions set forth above applying section 387 of the California Code of Civil Procedure state the appropriate rule for intervention in this Court under Rule 24(a)(2) of the Federal Rules of Civil Procedure, Great American's motion here is premature.

With respect to funds associated with projects bonded by Great American, there is no evidence[5] that Travelers has sought or will seek to attach accounts held in trust pursuant to the indemnity agreement between Defendants and Great American—funds that Great American contends "are not property of KOO." *See* Mot. to Intervene at 3. Neither the existing nor

---

[5] Counsel for Great American stated at the hearing that there was some confusion involving potential attachment of one such account, but conceded that Great American had not submitted evidence regarding that issue with its present motion and implied that any dispute regarding that particular account had been resolved.

9

1  proposed writs of attachment in this case encompass assets that are not property of Defendants.
2  The mere possibility that Travelers would seek to attach such accounts is not sufficient to grant
3  Great American a right to intervene at this time, either under Rule 24(a)(2) and *Alisal* or based on
4  the California authority discussed above.

The real property at issue presents a somewhat closer question, because Great American claims an interest through deeds of trust in parcels identified in the existing writ of attachment, as well as other parcels that Travelers seeks to add by its present motion. Nevertheless, there is no evidence that Great American has yet sought to foreclose on any of the real property at issue, or that Travelers has levied upon any such property pursuant to the writ of attachment. Nor are conflicting claims to the property inevitable: Defendants might, for example, repay their debts to Great American and regain unencumbered interest in the property before Travelers attempts to levy upon the property. Once again, the mere possibility that Travelers would attach property owned by Great American—either as an overreach beyond the scope of the authorized writ, or due to a genuine dispute of ownership—is not sufficient to warrant intervention at this time. "To hold otherwise would create a slippery slope where anyone with an interest in the property of a party to a lawsuit"—or here, anyone who has been assigned a trust interest in such property—"could bootstrap that stake into an interest in the litigation itself." *See Alisal*, 370 F.3d at 920 n.3.

For the reasons discussed above, Great American's motion to intervene under Rule 24(a)(1) is DENIED. Great American's claim to property that Travelers may or may not attempt to attach does establish a meaningfully more significant connection to the subject matter of this action than the judgment creditor in *Alisal* could claim with respect to that case. This order is without prejudice to Great American renewing its motion to intervene if a more concrete dispute arises, although the parties are strongly encouraged to cooperate to avoid such an outcome.

### IV. ANALYSIS OF MOTION TO AMEND ATTACHMENT ORDER

#### A. Legal Standard

Travelers invokes Rule 60(b) of that Federal Rules of Civil Procedure as the vehicle for amending the previous order granting its application for a writ of attachment. That rule governs relief "from a final judgment, order, or proceeding," and sets forth specific grounds for relief at

10

subparts (1) through (5), none of which apply to this case. Subpart (b)(6) is a "so-called catch-all provision" that allows a court to set aside an order or judgment for "any other reason that justifies relief." *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008); Fed. R. Civ. P. 60(b)(6). That provision "is to be 'used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.'" *Id.* (quoting *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006)). "Accordingly, a party who moves for such relief 'must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with . . . the action in a proper fashion.'" *Latshaw*, 452 F.3d at 1103 (quoting *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002)).

The Court is not persuaded that Rule 60(b)—an extraordinary remedy for relief from an adverse final judgment—sets the appropriate standard for the present issue, which is whether an attachment order should be revised to more specifically name property that, according to Travelers, already falls within the scope of the Court's previous order. *See* Mot. for Attachment at 6 (stating that "Travelers is asking the Court to add identified properties subject to the prior attachment orders"). So long as Travelers can show that the categories of property at issue are in fact subject to the previous order, the Court is inclined to issue a revised attachment order to more specifically identify the scope of permissible attachment.

### A. Diligence and Timeliness

Although Defendants argue that Travelers' lack of due diligence before its initial application is grounds for denying the present motion, *see* Opp'n to Amendment at 2, Defendants have not cited, and the Court is not aware of, any authority setting a time limit or threshold of diligence for a plaintiff to seek a writ of attachment or to modify such a writ. Nor have Defendants identified any prejudice that would result from Travelers seeking to clarify the scope of the attachment order at this time rather than when it first applied for attachment. The Court finds any lack of diligence by Travelers irrelevant to the present motion.

### B. Attachment of Trust Assets

The parties' substantive arguments focus on whether Travelers can attach assets held by

11

the Odister Trust. For the reasons discussed below, the Court holds that such attachment is permitted under California law.

### 1. Attachment and Revocable Trusts

In California, "[i]t is against public policy to permit a man to tie up his property in such a way that he can enjoy it but prevent his creditors from reaching it," including by holding assets in a trust for the settlor's own benefit. *Nelson v. Cal. Tr. Co.*, 33 Cal. 2d 501, 501−02 (1949). Section 18200 of the California Probate Code provides that if the settlor of a trust "retains the power to revoke the trust in whole or in part, the trust property is subject to the claims of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor." Cal. Prob. Code § 18200; *see also Walgren v. Dolan*, 226 Cal. App. 3d 572, 578 (noting that the "increasing use of revocable living trusts as probate avoidance devices caused concern in the California Legislature over the problems faced by creditors of settlors," leading to the enactment of section 18200 and other statutes). Courts have consistently held that section 18200 allows a judgment creditor to reach the assets of a revocable trust set up by a judgment debtor. *E.g.*, *In re Ferrante*, No. SA CV 16-337 MWF, 2016 WL 4844073, at *4 (C.D. Cal. Sept. 13, 2016) (holding that a judgment lien extended to "a *settlor's* property held in a revocable trust" pursuant to Probate Code section 18200); *Keitel v. Heubel*, 103 Cal. App. 4th 324, 336−40 (2002) (finding that an appeal of an order allowing a creditor to reach revocable trust assets was frivolous).

In the somewhat different context of tax assessments, a California appellate court held that no change in ownership occurs when property is transferred to a revocable trust, quoting with approval a legislative task force's conclusion that the settlor of such a trust is "the true owner" of property held by the trust. *Empire Props. v. County of Los Angeles*, 44 Cal. App. 4th 781, 787−88 (1996). Similarly, in a case not cited by either party, a California court considering the validity of an easement held that "[p]roperty transferred to, or held in, a revocable inter vivos trust is nonetheless *deemed the property of* the settlor and is reachable by the creditors of the settlor" under section 18200, and that a settlor in such circumstances "'has the equivalent of full ownership of the property.'" *Zanelli v. McGrath*, 166 Cal. App. 4th 615, 633−34 (2008) (quoting *Walgren*, 226 Cal. App. 3d at 578) (emphasis added).

12

The parties have not identified any cases specifically considering whether assets held by a revocable trust are subject to a writ of *attachment* against the settlor. Defendants argue that the lack of authority directly on point is itself grounds for denial of Travelers' motion, because Travelers has the burden to show that it is entitled to relief. Opp'n to Amendment at 8. Although this Court is aware of no published decision by a California court squarely addressing the issue,[6] the Court nevertheless concludes that California courts would allow attachment under these circumstances.

As a starting point, it is not controversial that judgment creditors can reach assets held in a revocable trust pursuant to section 18200. *See In re Ferrante*, 2016 WL 4844073, at *4; *Keitel*, 103 Cal. App. 4th at 336−40. The broad language of section 18200 makes assets held in revocable trusts available to "creditors" generally, not only to judgment creditors. *See* Cal. Prob. Code § 18200. Despite Defendants' arguments to the contrary, there is no significant difference between California's judgment lien statute and its attachment statute that would justify different treatment of trust assets for judgment debts than for attachment. *Compare* Cal. Civ. Proc. Code § 697.340(a) ("A judgment lien on real property attaches to all interests in real property in the county where the lien is created (whether present or future, vested or contingent, legal or equitable) that are subject to enforcement of the money judgment against the judgment debtor . . . but does not reach rental payments, a leasehold estate with an unexpired term of less than two years, the interest of a beneficiary under a trust, or real property that is subject to an attachment lien in favor of the creditor and was transferred before judgment."), *with id.* § 487.010(c)(1) (allowing attachment of "[i]nterests in real property except leasehold estates with unexpired terms of less than one year"). Although the judgment lien statute is more verbose, the language of the

---

[6] The Court is aware of one unpublished case indicating that assets of revocable trusts can be attached, but holding that the property at issue should not be included in an attachment order because there was no evidence from which to determine whether the trust at issue was revocable. *See generally E. W. Bank v. Spiro*, No. B210451, 2009 WL 4894355 (Cal. Ct. App. Dec. 21, 2009) (unpublished). That case is nonprecedential and cannot be cited to California state courts. This Court does not rely on it in resolving the present motion. *See also Harbor Pipe & Steel, Inc. v. Stevens*, No. G035530, 2006 WL 856215, at *5 (Cal. Ct. App. Apr. 4, 2006) (unpublished) (holding in the context of judgment liens that "Probate Code section 18200 simply provides that all property contained within the Sarvers' revocable trust is subject to recorded liens against them").

attachment statute is no less broad, and in fact includes fewer exceptions. This statutory scheme therefore suggests that section 18200 applies to writs of attachment in the same manner as to judgment liens.

Well-established state policy bolsters that conclusion. A rule that shields from attachment assets held in a revocable trust for the settlor's benefit would "permit a man to tie up his property in such a way that he can enjoy it but prevent his creditors from reaching it," at least during the early stages of an action. *Cf. Nelson*, 33 Cal. 2d at 501−02.[7] While Defendants are correct that attachment requires a lesser showing than is required for final judgment, *see* Opp'n to Amendment at 5−6, Defendants identify no reason why the legislature, having found that lesser showing appropriate for attachment of property held directly by a defendant, would have intended to exclude assets held in revocable trusts. The Court is aware of no statutory or judicial authority for such an exception, which would effectively encourage the use of revocable trusts to shield assets from attachment and would cut against multiple courts' conclusions—albeit in contexts other than attachment—that assets in a revocable trust are effectively the property of the settlor under California law. *See Zanelli*, 166 Cal. App. 4th at 633−34; *Empire Props.*, 44 Cal. App. 4th at 787−88. The Court holds that property held in a revocable trust for the benefit of the settlor may be treated as property of the settlor for the purpose of attachment.[8]

### 2. Travelers May Attach Assets of the Odister Trust

For assets of the Odister Trust to be subject to attachment, the Odister Trust must be revocable. Travelers' relies on Odister's declaration on trust transfer deeds for all but one of the properties at issue, under penalty of perjury, that the transfer to the Odister Trust was "to a revocable trust," Van Ornum Decl. Exs. A−F, as well as Odister's certification to Fidelity Investments that the Odister Trust was "a Revocable Living Trust where the Grantor(s),

---

[7] There is no indication that Odister created the Odister Trust or transferred property to it in an improper attempt to shield assets from creditors. California's policy against such practices is nevertheless relevant here because the rule that Odister asks the Court to adopt would undermine that policy, even if that was not Odister's intent here.

[8] At the hearing, defense counsel all but conceded this point, stating that Defendants filed their opposition brief instead primarily to rebut any implication from Travelers' motion that Odister had sought to use the Odister Trust to shield assets from creditors. Again, the Court makes no such finding.

14

Trustee(s), and Beneficiary(ies) are all the same individual(s)," *id.* Ex. H at 8.[9] Defendants offer no evidence to the contrary. Defendants do not assert that the Odister Trust was *not* revocable, but instead suggest only that Travelers has not made a sufficient showing. *See* Opp'n to Amendment at 2.

Defendants did not produce actual trust documents for the Odister Trust to Travelers because the parties had not entered a protective order at the time that Travelers requested documents, or in the intervening period before Travelers filed its present motion. Woodward Decl. (dkt. 90-1) ¶ 3. Correspondence indicates that counsel for both parties agreed in early February "to cooperate on drafting a Stipulated Protective Order." *Id.* ¶ 3 & Exs. A, B. Travelers filed its present motion on March 17, 2017, and Defendants filed their opposition on March 23, 2017. The parties did not file a stipulated protective order until May 12, 2017. *See* dkt. 117. It is not clear why a protective order could not have been drafted before Travelers filed its motion—particularly given that the protective order ultimately filed is substantially similar, if not identical, to the model protective order available on the Court's website. *See id.* In light of the parties' agreement to cooperate on preparing the protective order, the Court attributes the delay to both parties, and declines to draw any inference from the unavailability of confidential documents for this motion.

The record before the Court includes multiple attestations by Odister, over a period of several years, that the Odister Trust is revocable. With no evidence to the contrary, the Court finds that evidence sufficient to conclude that the Odister Trust is a revocable trust, and thus sufficient to hold that assets held by the Odister Trust may be treated as Odister's property for the purpose of attachment. Clarifying the attachment order to explicitly include Odister Trust property is therefore appropriate, but does not substantively change the scope of Travelers' attachment rights.

### 3. Travelers May Attach Any Interest Defendants Hold in the Three Additional Properties

The deeds submitted by Travelers also show that Odister transferred to the Odister Trust

---

[9] Based on the pagination denoted at the top left corner of each page of Exhibit H.

each of the three properties that Travelers wishes to add to the attachment order. Van Ornum Decl. Exs. B, C, E. That evidence is sufficient to add those properties to the order. Because Odister Trust assets are considered Odister's property for the purpose of attachment, and because the previous order authorized Travelers to attach "interest of Defendant Keith Odister in . . . any other real property in which said defendant holds a right, title or interest," the explicit addition of those properties does not substantively change the scope of Travelers' attachment rights.

## V. CONCLUSION

For the reasons discussed above, Great American's motion to intervene is DENIED, without prejudice to any rights that Great American may assert if Travelers purports to attach property owned by Great American. Travelers' motion for an amended attachment order explicitly including property owned by the Odister Trust and listing three additional parcels of real property is GRANTED. The Court will issue a separate order setting forth the property subject to attachment.

**IT IS SO ORDERED.**

Dated: June 8, 2017

JOSEPH C. SPERO
Chief Magistrate Judge